HANK McWHORTER, Plaintiff-Appellee, v. REALTY WORLD-STAR, INC., Defendant-Appellant.

Fifth District    No. 5—87—0139

Opinion filed July 1, 1988.

Michael R. Bilbrey, of Hopkins & Bilbrey, P.C., of Granite City, for appellant.

Lawrence T. Hartman, of Pratt & Callis, P.C., of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendant-appellant, Realty World-Star, Inc., appeals from a judgment of the circuit court of Madison County in favor of plaintiff-appellee, Hank McWhorter. Plaintiff began working as a real estate salesman for defendant on March 1, 1983. On November 8, 1983, plaintiff and defendant entered into an independent contractors agreement whereby plaintiff was to provide services to defendant in return for payment of commissions by defendant. Among plaintiff's duties were to obtain listings of houses for sale and to sell those houses. Paragraph 2 of the independent contractors agreement provides:

"Salesperson shall receive as compensation for his services

commissions on any sales which he makes or on any listings which he obtains in accordance with the commission rates then in effect in the Star organization."

Paragraph 5 of the agreement provides in part:

"The rights of the parties to any commission or division thereof which accured [sic] prior to the time of said notice [of termination] shall not be divested by the termination of this contract."

Finally, paragraph 9 of the agreement provides:

"The salesperson recognizes that, in order to insure the orderly conduct of the business and enhance the reputation of the Star organization and the salesperson associated with it, Star has developed a policy and procedure manual, salesperson agrees to abide by the terms of such policy and procedure manual insofar as it pertains to the handling of salesperson's service as a salesperson, and as to the means of securing listings, handling prospects, and consummating negotiations; but salesperson otherwise shall have full discretion as to the conduct of his activities."

Plaintiff's employment with defendant was terminated on April 30, 1984. While still employed by defendant, plaintiff obtained listings for defendant on three properties. These three properties were sold by defendant subsequent to the termination of plaintiff's employment. Defendant refused to pay plaintiff the commissions allegedly owed to him for the listings, and plaintiff brought suit.

The cause was tried to the court sitting without a jury. Relying on its office policy manual, defendant argued that plaintiff was entitled to commissions on properties sold subsequent to termination of his employment only if sales contracts on the properties had been signed and accepted by both buyer and seller prior to plaintiff's termination. The office policy manual provides:

"2. Upon termination of employment, either by dismissal or by sales counselor's desire to leave company.

a. Sales commissions shall be paid on any bona fide sale that is closed out after termination. A bona fide sale is defined as a sale where there is a signed and accepted contract by both buyers & sellers with no contingencies other than financing.

b. Same as above applies to listing as per above, if in the process of being sold by company or another company.

3. Upon termination, all listings shall become the sole property of the company. There will be no commission payable on

any listing you leave with the agency, other than 2 (b) above."
It further provides:

"If a sales counselor leaves the organization, he shall forfeit all rights to listings, rentals and listing commissions on contracts not consummated before his departure."

Defendant argued that the office policy manual is a part of the employment contract and that the independent contractors agreement can be understood and construed only in conjunction with the office policy manual. Because no sales contracts had been signed on the subject properties prior to plaintiff's termination, plaintiff was not entitled to commissions for the listings he had obtained.

The trial court, after hearing evidence and argument, entered judgment in favor of plaintiff in the amount of $1,822.66, the amount of the commissions on the three properties. In so doing, the trial court found that the office policy manual had not been incorporated by reference, in its entirety, into the independent contractors agreement, nor was there sufficient evidence to find that the office policy manual had been presented to and accepted by plaintiff as part of his employment contract. The court found that the plain, unambiguous language of paragraphs 2 and 5 of the independent contractors agreement provide that plaintiff is to receive commissions on any listings he obtains and that this right is not divested by termination of plaintiff's employment.

Defendant appeals, arguing: (1) that paragraphs 2 and 5 of the independent contractors agreement are ambiguous, requiring reference to the office policy manual to ascertain their meaning; (2) that the office policy manual was incorporated by reference into the independent contractors agreement; and (3) that under *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the office policy manual was part of the binding employment contract entered into between plaintiff and defendant, that the two documents are harmonious and that if they conflict, the more specific provisions of the office policy manual should control.

■ In an action based upon a contract, it is for the trial court to determine, as a matter of law, whether or not there exists an ambiguity in the written instrument. (*Lukas v. Lightfoot* (1985), 131 Ill. App. 3d 566, 568, 476 N.E.2d 1, 2.) Where a question of law is raised by an appeal, this court may determine the issue independently of the trial court's judgment. *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 320, 369 N.E.2d 525, 528.

■ An ambiguous contract is one capable of being understood in more than one sense or an agreement obscure in meaning through in-

definiteness of expression or having a double meaning. (*Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 481, 476 N.E.2d 1271, 1275.) A contract is not rendered ambiguous simply because the parties do not agree on its meaning. *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 991, 436 N.E.2d 663, 666.

■ We find no ambiguity in the language of paragraphs 2 and 5 of the independent contractors agreement. These paragraphs are not capable of being understood in more than one sense, nor are they obscure in meaning through indefiniteness of expression or by having a double meaning. They clearly provide that a salesperson shall receive a commission on any listings he obtains and that this right to commissions shall not be divested by termination of the employment contract. The fact that paragraph 2 requires reference to some other source to determine the amount of commission does not render the contract ambiguous or indefinite with respect to plaintiff's right to receive a commission. It simply provides that the amount of commission may vary from time to time.

In the absence of an ambiguity, the intention of the parties must be ascertained by the language utilized in the contract itself. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293, 469 N.E.2d 178, 179.) Thus, the contract terms must be given their ordinary and natural meaning, and no parol or extrinsic evidence may be considered to vary the meaning of the terms. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879, 882.) The trial court did not err in determining that paragraphs 2 and 5 of the independent contractors agreement were not ambiguous and in refusing to give consideration to the office policy manual in determining the meaning of those paragraphs.

■■ Nor did the trial court err in finding that the office policy manual was not incorporated by reference, in its entirety, into the independent contractors agreement. As a general proposition, a contract may incorporate all or part of another document by reference. (*Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 192-93, 454 N.E.2d 249, 251.) The reference must show an intention to incorporate the document and make it a part of the contract. (*Pinson v. Allstate Insurance Co.* (1979), 68 Ill. App. 3d 788, 791, 386 N.E.2d 638, 640.) Paragraph 9 of the independent contractors agreement, which makes reference to the office policy manual, specifically limits that reference to certain specified provisions of the policy manual. Thus, paragraph 9 of the independent contractors agreement binds the salesperson to comply only with speci-

fied provisions of the policy manual and does not make reference to other provisions of the policy manual. The independent contractors agreement does not intend, nor attempt, to incorporate by reference the office policy manual in its entirety, but only certain of its provisions. The salesperson's right to receive commissions after termination of his employment is not among those provisions. The trial court properly so found.

Finally, defendant argues that under *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the office policy manual is part of the binding employment contract entered into between plaintiff and defendant. *Duldulao* holds that an employee handbook or other policy statement may create enforceable contractual rights if the traditional requirements for contract formation are present.

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." 115 Ill. 2d at 490, 505 N.E.2d at 318.

We find *Duldulao* to be distinguishable from the case before us, because, unlike our case, in *Duldulao* there was no express employment contract. In *Duldulao*, the employee was hired for an indefinite period, creating a presumption that the employment was "at will." The Illinois Supreme Court held that the presumption of at will employment can be rebutted by demonstrating that the parties contracted otherwise and that an employee handbook may constitute evidence of such a contract.

■ In the instant case, an express employment contract was entered into between the parties which explicitly addressed the plaintiff's right to receive commissions subsequent to termination of his employment. Furthermore, as discussed above, paragraph 9 of the employment contract, which refers to the office policy manual, explicitly limits the binding effect of the policy manual to certain specified provisions, not including plaintiff's right to receive commissions subsequent to termination. We do not think, under these circumstances,

that an employee handbook or policy statement can be found to override or modify the clear and unambiguous terms of an express employment contract. Had the parties wished to bind themselves to all of the terms of the office policy manual, they could have done so in the express employment contract. There is a strong presumption against terms that could have been easily included by the parties as terms of the contract but were not. *Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 1011, 479 N.E.2d 1031, 1033.

The trial court properly found that the office policy manual did not modify the terms of the independent contractors agreement with respect to plaintiff's right to receive commissions subsequent to termination of his employment.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS and LEWIS, JJ., concur.