ROBERT ARNESON, Plaintiff-Appellee and Cross-Appellant, v. BOARD OF TRUSTEES, McKendree College, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—89—0867

Opinion filed March 15, 1991.

Delmar O. Koebel, of Lebanon, for appellant.

Charles J. Kolker, of Law Offices of Charles J. Kolker, of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Robert Arneson, brought an action for breach of an employment contract against defendant, Board of Trustees, McKendree College. After a bench trial, the circuit court of St. Clair County entered judgment in favor of plaintiff and against defendant in the sum of $17,087 plus costs of suit, on April 25, 1989. Defendant appeals from the December 4, 1989, order of the St. Clair County circuit court denying his motion to reconsider the April 25, 1989, judgment, claiming that the court erred as a matter of law in determining that the McKendree College Faculty Manual was incorporated by reference in Arneson's employment contract. In the alternative, defendant contends that if the manual was incorporated in the contract as a matter of law, plaintiff cannot recover for breach of said contract because he failed to mitigate his damages. Plaintiff appeals from the December 4, 1989, order denying his motion to reconsider the April 25, 1989, judgment, as well, claiming that the court erred in denying his prayer for prejudgment interest on the amount of damages found in the court's judgment, from May 31, 1982, through April 25, 1989.

Plaintiff has a master's degree in psychology, and his prior work experience includes positions as a juvenile probation officer, a correctional counselor and coordinator, and an assistant directorship and directorship of State councils on crime control. In addition to his teaching assignments at McKendree College, plaintiff has taught at the Air Force Academy and junior colleges in Colorado. Plaintiff had been employed by defendant as an instructor in the criminal justice pro-

gram for the 1977-78, 1978-79, 1979-80, 1980-81, and 1981-82 academic years. Plaintiff was a probationary, nontenured faculty member, subject to review in his first, second, fourth, and sixth years of service, before receiving a contract for the following year. Plaintiff was in his fifth year of service during the 1981-82 academic year.

Plaintiff entered into his final employment contract with defendant on March 20, 1981, which appointed him as a probationary instructor in criminal justice studies from September 1, 1981, until May 31, 1982, at an annual salary of $17,087. The terms of the employment contract included, *inter alia*, the following:

"3. *** The faculty member agrees to adhere to policies enacted by the Board of Trustees, administration and/or general faculty of McKendree College, submit to regular and thorough evaluations of professional competence, and conduct his/her duties conscientiously and professionally.

4. The faculty member agrees to observe the rules and regulations of the College, ***.

5. *** A probationary appointment is for one year unless otherwise stated on this contract."

Introduced into evidence as plaintiff's exhibit No. 6 was the McKendree College Faculty Manual, published January 1981 by its faculty affairs committee on structure. Plaintiff contends that the faculty manual was a part of the contract between defendant and himself because paragraph 3 of the contract refers to "policies" and paragraph 4 refers to "rules and regulations of the College." Appendix F-3, section (c), of the faculty manual provides as follows:

"Regardless of the stated term or other provisions of any appointments, written notice that a probationary appointment is not to be renewed will be given to the faculty member in advance of the expiration of his appointment, as follows: (1) Not later than March 1 of the first academic year of service if the appointment expires at the end of that year; or, if a one-year appointment terminates during an academic year, at least three months in advance of its termination; (2) not later than December 15 of the second academic year of service if the appointment expires at the end of that year; or, if an initial two-year appointment terminates during an academic year, at least six months in advance of its termination; (3) at least twelve months before the expiration of an appointment after two or more years of service at the institution. The institution will notify faculty members of the terms and conditions of their renewal by March 15."

Based on this provision contained in the faculty manual, plaintiff contended that he was entitled to notice at least 12 months in advance of the termination date of the 1981-82 employment contract in order not to renew his contract for the 1982-83 academic year. He alleged in his complaint that President Gerrit TenBrink orally notified him on July 15, 1982, that his appointment as a member of the McKendree College faculty would not be renewed for 1982-83.

Defendant acknowledged the existence of the faculty manual, but President TenBrink testified that although the manual had been presented to the Board of Trustees, it had refused to adopt the manual except for a paragraph relating to academic freedom. However, President TenBrink acknowledged that he had told both the faculty and the Board that he would try to the best of his ability to follow the manual when he found it practical and appropriate to do so. Moreover, he admitted that he could not think of any situation in which he had not followed the manual.

Ted Anderson, academic dean of McKendree College from 1981 through 1985, testified that part of his responsibility as dean included the evaluation and recommendations to the president concerning the probationary faculty. He served as chair of the contract for renewal, promotion, and tenure committee (hereinafter CRPT committee). The committee reviewed student evaluations of the faculty member, as well as evaluations by the chairperson of the department and peer evaluation. Plaintiff made application for promotion in 1981, and the CRPT committee recommended the promotion in the fall of 1981; however, Anderson testified the actual promotion would not have been confirmed by defendant until the May 1982 board of directors meeting.

Dean Anderson acknowledged that as to the faculty, the rules and regulations of the college would primarily have been encompassed in the faculty manual as well as the faculty contracts. Anderson testified that he used the faculty manual as a guiding document for his interactions with the faculty. He also acknowledged that the manual covered a grievance procedure if a faculty member was to be dismissed "for cause."

Dean Anderson testified that early in March 1982, he had received three complaints from students about plaintiff and notified plaintiff that he intended to follow up on these complaints by a telephone survey of the students in his class. Plaintiff did not receive a contract on March 15, 1982, and was notified at a meeting with Dean Anderson on March 17, 1982, that Anderson would not recommend renewal of plaintiff's contract. Anderson testified that he also notified

President TenBrink on March 17, 1982, that he was not recommending renewal of plaintiff's contract for the 1982-83 academic year. Anderson delivered a copy of this notification to plaintiff on or about March 26, 1982, along with a memorandum detailing the reasons behind his recommendation to the president. In Anderson's memorandum concerning the recommendation he stated that students had complained that plaintiff was dismissing his evening classes an hour and a half before their scheduled dismissal time, that plaintiff had failed to distribute a syllabus, that his March 3, 1982, class was cancelled without notifying the dean, the department chair, or the academic records office, and that a number of his students felt that one of his classes had very little substance.

Plaintiff filed a grievance with the faculty grievance inquiry committee on March 25, 1982, contending that he was unfairly denied contract renewal for 1982-83. Plaintiff explained to the inquiry board in response to the dean's charges that he conducted his evening classes without breaks so that he could dismiss his students early and that no one had said he could not do this before. He also stated that he had given his class an oral syllabus at the first class session but was unable to submit a written syllabus to the department chair by that point in the semester due to typing delays in the secretarial staff. With regard to the cancelled class, plaintiff explained that he had had car trouble that day and was unable to obtain alternate transportation, but was able to notify all but one of his students that he was cancelling the class. The inquiry committee notified plaintiff on March 30, 1982, that because the dean was treating the nonrenewal as a "dismissal for cause," it would be necessary for plaintiff to petition the faculty grievance hearing committee for a formal hearing.

Plaintiff requested a formal hearing on his grievance on April 12, 1982. This committee, by letter to President TenBrink on May 13, 1982, found that while plaintiff was guilty of negligence in meeting his contractual duties during the spring term of 1982, the committee could come to no definitive stand as to the proper disciplinary action to be taken by the administration. It recommended that, before exercising its right of dismissal, the administration should further investigate plaintiff's teaching pattern over the previous five years. Plaintiff asked that the governing board review his case on July 27, 1982. The board of directors approved a motion on December 22, 1982, concurring with the findings of the faculty grievance hearing committee that plaintiff was guilty of negligence in meeting his contractual duties and with the judgment of the administration that he was dismissed for cause.

President TenBrink testified that he accepted the dean's recommendation and assumed that plaintiff understood that he was not being renewed when he was not issued a contract on March 15, 1982. He also testified that he accepted the part of the grievance hearing committee's recommendation that found plaintiff delinquent in his duties because that was the same recommendation he had received from the dean in March 1982. President TenBrink also noted that plaintiff had failed to complete an evaluation of the criminal justice program by the end of the 1981-82 academic year and that evaluation was part of plaintiff's teaching assignment for the year. However, he admitted that this was not part of the four items Anderson listed as reasons for the dismissal with cause because the evaluation was not due until the end of the school year. President TenBrink denied that his decision not to renew plaintiff's contract for the 1982-83 academic year was based on any financial conditions or problems of funding the criminal justice department studies. However, he acknowledged that Federal funding for the program was being phased out and that in the fall of 1982 students could no longer major in criminal justice.

In May 1982 President Tenbrink offered plaintiff a position as chief of security for the college at the same salary he would have received as a faculty member, but plaintiff refused the offer because he felt it was beneath someone of his experience and qualifications. Plaintiff applied for unemployment compensation, to which defendant filed an objection claiming that plaintiff was ineligible for benefits because he had refused employment as chief of security. The unemployment division determined, however, that plaintiff was eligible for benefits because it found after hearing that the position offered by defendant was not comparable to that of college instructor. Plaintiff also testified that he applied to other colleges in the area seeking employment as a criminal justice instructor without avail. Finally, in October 1982 plaintiff started a scuba-diving business which suffered a $30,000 loss during its first year of operation.

■ Although defendant contended at trial that plaintiff was not being renewed for cause, because he had not satisfactorily fulfilled the 1981-82 contract, this contention is not propounded on appeal. Instead, defendant argues that the faculty manual was not incorporated into its contract with plaintiff, who was employed on a year-to-year basis, and thus it had an absolute right not to renew plaintiff's contract for the 1982-83 academic year. A contract may incorporate all or part of another document by reference. (*McWhorter v. Realty World-Star, Inc.* (1988), 171 Ill. App. 3d 588, 592, 525 N.E.2d 1205, 1207.) The reference must show, however, an intention to incorporate the

document and make it a part of the contract. (*McWhorter*, 171 Ill. App. 3d at 592, 525 N.E.2d at 1207.) The question of the existence of a contract is a matter of law for determination by the court. (*Robinson v. Christopher Greater Area Rural Health Planning Corp.* (1991), 207 Ill. App. 3d 1030.) Whether the faculty manual, including the provisions on notice for nonrenewal and the grievance procedures for dismissal, was part of plaintiff's contractual rights is therefore a question of law. (*Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 521, 545 N.E.2d 373, 376.) Where a question of law is raised by an appeal, this court may determine the issue independently of the trial court's judgment. *McWhorter*, 171 Ill. App. 3d at 591, 525 N.E.2d at 1207.

■ Although plaintiff could not be considered an "at will" employee because he was employed for a definite term, the faculty handbook specifically referred to various time limits for notice to be given by the *administration* if a nontenured probationary employee was not to have his employment contract renewed for the following year. The supreme court has held with respect to "at will" employees that an employee handbook or other policy statement can create enforceable contractual rights limiting the employer's right of immediate dismissal of an employee, if the traditional requirements for contract formation are present:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318.)

Defendant attempts to distinguish the faculty manual in this case from cases like *Duldulao*, which have found employment manuals to be part of the employment contract on the basis that the manual was not prepared and disseminated by the employer board of trustees, but by a faculty committee representing the employees. Moreover, defendant notes that it refused to adopt the manual except for its provisions regarding academic freedom. However, we find that defendant is estopped from any disavowal of adopting the faculty manual as part of the rules and regulations of McKendree College, because of admissions made in testimony by its president and academic dean and by its

conduct in observing the procedures set forth in the manual in dealing with its faculty members.

■■ ■ To be estopped, a party must have engaged in conduct which reasonably causes the other person to change his position by lulling the claimant into a false sense of security. (*Phillips Petroleum Products Co. v. Industrial Comm'n* (1983), 94 Ill. 2d 200, 205, 446 N.E.2d 234, 236.) Both President TenBrink and Dean Anderson acknowledged that the manual constituted a part of the "rules and regulations" by which a faculty member was required to abide, specifically referenced in the yearly employment contract. For the faculty member to be required to abide by the rules with no parallel obligation for the college to observe or recognize them would render the rules and regulations of the college to be without mutuality. Moreover, while President TenBrink contended that he would only follow the faculty manual if he deemed it "appropriate" to do so, he acknowledged that he could think of no prior situation in which he had not followed the manual. Defendant also observed the notice procedures by sending out renewal contracts by the March 15 deadline each year. Finally, it is apparent that Anderson, TenBrink and the board of trustees itself took part in plaintiff's grievance procedure.

Indeed, defendant's theory at trial belies the contention on appeal that the faculty manual was not incorporated into plaintiff's contract by reference to "rules and regulations." Dean Anderson followed the "for cause" dismissal grievance procedure as stated in the faculty manual by giving plaintiff written notices of the charges constituting the "cause" for the dismissal, and President TenBrink followed the procedure by accepting at least some of the findings made by the grievance hearing committee. Moreover, the full board reviewed the findings of this committee as the final review of the dismissal set forth by the grievance procedure. Therefore, we find that the manual was incorporated into the employment contract when defendant caused its faculty to rely on the manual being part of the "rules and regulations" to which both parties would be subject. We affirm the finding of the court below that there was a breach of that employment contract, as defendant has not argued in the alternative that the court below erred in finding that it did not establish adequate cause for plaintiff's termination.

■■ In the alternative, defendant does argue that if there was a breach of contract the trial court erred in denying its affirmative defense that plaintiff failed to mitigate his damages. We disagree. A wrongfully discharged employee must act to mitigate his damages by seeking similar employment, and his damages will be reduced by

those sums which he earns or could have earned through the exercise of reasonable diligence in seeking employment. (*Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632, 445 N.E.2d 872, 876.) However, when the alternate employment is an offer of reemployment by the original employer, the employee need not always accept such an offer or be precluded from seeking damages. (*Schwarze*, 112 Ill. App. 3d at 638, 445 N.E.2d at 876.) It has been recognized that if an employee is hired for a specific position, a subsequent demotion or diminution of duties may be a breach of the employment contract. (*Schwarze*, 112 Ill. App. 3d at 639, 445 N.E.2d at 877.) Moreover, the fact that the salary was the same does not erase the stigma attached to the demotion and change of duties. *Schwarze*, 112 Ill. App. 3d at 639, 445 N.E.2d at 877.

■ Plaintiff testified that he refused the offer of the chief of security position because it was "beneath him." We agree that this position offered by President TenBrink was beneath plaintiff's qualifications, both in experience and in education. The board reviewing defendant's objection to plaintiff's application for unemployment agreed that the position of chief of security was not similar employment to that of instructor on the faculty of the college. We therefore affirm the finding of the court below denying defendant's affirmative defense.

■ We will now address the issue raised on cross-appeal: whether the trial court erred in failing to award prejudgment interest on the amount of the damages awarded from the last day of the 1981-1982 employment contract until the date of the judgment. The prejudgment interest statute provides as follows:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance [;] on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1987, ch. 17, par. 6402.)

Plaintiff argues that this statute applies to the damages awarded for the breach of his employment contract, citing *Finazzo v. Mid-States Finance Co.* (1965), 63 Ill. App. 2d 161, 211 N.E.2d 290. In *Finazzo*, the employer breached its employment contract by failing to pay the employee a bonus of a percentage of the company's net earnings in

addition to his base salary. The court awarded the employee prejudgment interest on the amount of the net earnings percentage bonus the court calculated was owed under the contract. (*Finazzo*, 63 Ill. App. 2d at 176, 211 N.E.2d at 298.) In the instant case, however, plaintiff was not awarded damages for amounts found due and owing on the 1981-82 employment contract but was awarded the damages proximately caused by defendant's failure to give the proper notice, that his appointment would not be renewed, in advance of the expiration of his contract.

■ Where, as in the instant case, an employment contract has been breached by the employer by failure to give proper notice cancelling the contract at the time of the discharge, the employee is entitled to the compensation and benefits he would have received during the additional time necessary for the notice to have been of proper length. (*Kemnetz v. Elliott Farmers Grain Co.* (1985), 136 Ill. App. 3d 226, 230, 482 N.E.2d 1076, 1079.) Appendix F-3, section (c), of the faculty manual required that probationary employees, like plaintiff, who had served at least two years at the institution, were entitled to be notified at least 12 months before the expiration of their appointment that the appointment would not be renewed. The notice of nonrenewal given in March 1982 would only have been proper notice of cancelling plaintiff's 1982-83 appointment. The damages awarded by the court were therefore proper under the *Kemnetz* case because it reasonably found that this would have approximated the minimum salary plaintiff could have expected had his contract been renewed for the 1982-83 academic year. Therefore, because the award did not represent money owed on an "instrument of writing" or "money withheld by an unreasonable and vexatious delay of payment," and considering the finding of the court below that defendant had a good-faith defense to the breach of contract case, we hold that the court did not err in ruling that plaintiff was not entitled to prejudgment interest.

For these reasons, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

RARICK, P.J., and HARRISON, J., concur.