# Illinois Official Reports

## Appellate Court

---

### *Reed v. Getco, LLC*, 2016 IL App (1st) 151801

---

| | |
|---|---|
| Appellate Court Caption | ZACHARIAH REED, an Individual, Plaintiff-Appellee, v. GETCO, LLC, an Illinois Limited Liability Company, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-1801 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-17892; the Hon. James E. Snyder, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William F. Dugan and Giselle Donado, of Seyfarth Shaw LLP, of Chicago, for appellant.<br><br>Chad A. Schiefelbein and Daniel P. Jackson, of Vedder Price P.C., of Chicago, for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Hall concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant Getco, LLC, a proprietary trading and financial services firm, appeals an order of the circuit court of Cook County granting summary judgment in favor of and awarding $1 million to plaintiff Zachariah Reed, a former employee. On appeal, defendant argues the circuit court erred in (1) finding defendant did not properly waive the noncompete provision in defendant's employment agreement with plaintiff, (2) interpreting the language of the employment agreement that granted defendant the sole and absolute discretion to modify plaintiff's noncompete restrictions, and (3) finding plaintiff did not have a duty to mitigate damages. For the following reasons, we affirm.

¶ 2                    I. BACKGROUND

¶ 3 On October 12, 2005, plaintiff began working for defendant as a developer/technical trader, pursuant to an employment agreement. Approximately 15 months later, defendant requested its employees, including plaintiff, to sign a new employment agreement (the agreement). The initial draft of the agreement had new terms and conditions, including in relevant part (1) an exclusivity clause, (2) restrictive covenants (noncompetition), (3) ownership of intellectual property developments, (4) mandatory alternative dispute resolution procedures for certain types of disputes, and (5) indemnification conditions.[1]

¶ 4 After negotiation between the parties, the agreement was revised. Section 6 of the agreement included the noncompetition provisions. Section 6(a) provides that plaintiff "agree[s] not to, directly or indirectly, alone or in association with or on behalf of any other person, engage in any competitive activity" during his employment and for a period of six months after the termination of his employment, regardless of the reason for his departure. Section 6(b) is a provision unique to plaintiff's agreement and provides, "[defendant] will pay [plaintiff]" $1 million or an amount based on a set formula. Section 6(b) further provides, "these payments will stop if [defendant] determines that I have violated any provision of this Agreement or if a court determines that any provision of this Section 6 is unenforceable." Section 6(d) reads, in relevant part,

> "if [plaintiff] believe[s] in good faith that the restrictions in this Section 6 will prevent [him] from obtaining a new job, [plaintiff] may notify [defendant] in writing, providing reasonable details about the proposed responsibilities of the new job ***. [Plaintiff] will discuss with [defendant] whether appropriate accommodations can be made to protect [defendant's] interests while allowing [plaintiff] to take the new job and any appropriate adjustments to the payments provided for in Section 6(b). *[Defendant] shall be under no obligation to modify the restrictions in this Section 6, but may do so in its sole and absolute discretion*." (Emphasis added.)

In addition, section 9 is titled "Intellectual Property Developments." Section 9 provides that plaintiff "irrevocably sell[s], assign[s] and transfer[s] to [defendant] all of [his] right[s], title[s] and interests" in intellectual property developments conceived by plaintiff, during his employment or for six months after the termination of his employment, regardless of the reason for his departure. Further, section 13 is titled "Miscellaneous" and provides that section

---

[1]The sections in the agreement that address exclusivity, mandatory alternative dispute resolution procedures, and indemnification conditions are not relevant to the disposition of this matter.

13(j) governs all waivers and modifications of any provision in the agreement. Section 13(j) states that no waiver or modification of any provision in the agreement would be effective "unless made pursuant to a writing signed by the party against whom the waiver or modification is enforced."

¶ 5 On January 19, 2007, the parties signed the agreement. Six years later, on July 11, 2013, plaintiff resigned. A little over a week thereafter, on July 19, 2013, plaintiff received an e-mail from defendant stating, "The Company hereby notifies you that the Restricted Period will be zero (0) months and/or is waived. You will not receive any Non-compete payments. For the avoidance of doubt, you may begin working for any employer immediately following your Separation Date." After his resignation, plaintiff received offers of employment from defendant's competitors. Plaintiff, however, did not accept any offers until the restricted period ended. On March 31, 2014, he began working for one of defendant's competitors.

¶ 6 On July 30, 2013, plaintiff filed a three-count verified complaint against defendant, alleging specific performance (count I), breach of contract (count II), and fraud, in the alternative (count III). In count II, plaintiff claimed defendant breached the noncompete provision in the agreement in its failure to pay plaintiff $1 million after the termination of his employment.

¶ 7 In response, defendant filed affirmative defenses claiming (1) plaintiff had no cause of action because defendant had the sole and absolute discretion to modify the restrictions in section 6, (2) plaintiff was estopped from obtaining relief because he resigned and failed to mitigate his damages, and (3) plaintiff was barred from recovery because he contributed to his own damages by resigning when he knew defendant could not waive the restricted period.

¶ 8 On January 8, 2015, plaintiff filed a motion for summary judgment on count II of the verified complaint, *i.e.*, breach of contract. Plaintiff argued he had affirmatively established (1) the agreement was valid and enforceable, (2) plaintiff performed all his obligations pursuant to the agreement, (3) defendant breached the agreement, and (4) plaintiff suffered damages as a result of defendant's breach. Plaintiff also moved for summary judgment on defendant's affirmative defenses.

¶ 9 On the same day, January 8, 2015, defendant also filed a motion for summary judgment on plaintiff's breach of contract claim. In its motion, defendant argued (1) defendant properly waived plaintiff's noncompete restrictions in the agreement because the restrictions were exclusively for defendant's benefit; (2) defendant properly exercised its discretion to modify the noncompete restrictions, under section 6(d) of the agreement, which provides, "[defendant] shall be under no obligation to modify the restrictions in this Section 6, but may do so in its sole and absolute discretion"; and (3) even if defendant had breached the agreement, plaintiff failed to mitigate his damages.

¶ 10 On May 20, 2015, the trial court entered an order finding in favor of plaintiff. The trial court stated that the rule that a party to a contract may unilaterally waive provisions contained in the contract for its sole benefit cannot apply in the instant case because "Section 13(j) prohibits any waiver or modification that is not in writing and signed by the party to be charged."

¶ 11 In addition, the trial court further found the sentence in section 6(d) did not grant defendant with absolute discretion to modify the noncompete provision in section 6, because the sentence in section 6(d) "does not stand alone." The trial court noted the sentence in section 6(d) "follows plain language" that contemplates a situation where plaintiff could request relief from

the noncompetition provisions if he found other employment he believed could violate his noncompete restrictions. The trial court explained that section 6(d) allows defendant to reject, in its sole and absolute discretion, such a request by plaintiff but does not permit defendant to unilaterally waive or modify section 6 as a whole.

¶ 12 Further, the trial court found plaintiff had no duty to mitigate damages because the terms of the agreement (1) obligated plaintiff to refrain from engaging in competitive activity for a set period of six months after he left defendant; and (2) in exchange, defendant agreed to pay plaintiff. The trial court reasoned that "[a] breach of this—or any—provision in the [a]greement was not a condition precedent to [defendant's] obligation to pay [plaintiff]. Rather, [plaintiff] and [defendant] negotiated and agreed that [plaintiff] would be paid a sum *** if and when he left [defendant]." This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14 On appeal, defendant argues the trial court erred in (1) finding defendant did not properly waive the noncompete provision in the agreement, (2) interpreting the language in section 6(d) of the agreement, and (3) finding plaintiff did not have a duty to mitigate damages. We address each issue in turn but first discuss our standard of review.

¶ 15                            A. Standard of Review

¶ 16 Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, demonstrate no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review grants of summary judgment *de novo*. *Williams*, 228 Ill. 2d at 417. Under *de novo* review, we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Given this court's independent review, we may affirm on any basis that is supported by the record, regardless of whether that basis was the reason for the trial court's judgment. *Hess v. Flores*, 408 Ill. App. 3d 631, 636 (2011). Having set forth our standard of review, we turn to consider whether the trial court erred in finding defendant did not properly waive the noncompete provision in the agreement.

¶ 17                                  B. Waiver

¶ 18 Defendant asserts the trial court erred in finding that it did not properly waive the noncompete provision in the agreement. Defendant sets forth three arguments in support of this contention. First, defendant argues the noncompete provision in section 6 was exclusively for its own benefit, which was "an option" it could unilaterally waive. According to defendant, the very nature of noncompete provisions makes them a benefit to the employer and a detriment to the employee, as it restricts the employee's ability to work postemployment. Second, defendant contends its waiver complied with the terms set forth in section 13(j) of the agreement, which required that modifications and waivers of any provision in the agreement must be in "writing signed by the party against whom the modification or waiver would be enforced." Defendant maintains the party against whom the waiver would be enforced is defendant and argues the e-mail it sent to plaintiff on July 19, 2013, constituted a proper

waiver. Third, defendant contends the noncompete payment was not a contractual right or benefit plaintiff was entitled to or could enforce and two conditions were required before payment: (1) plaintiff's employment terminated and (2) defendant exercised its option to enforce the noncompete provision.

¶ 19 Plaintiff responds that the trial court did not err in rejecting defendant's unilateral waiver argument because the noncompete provision was for the benefit of both parties to the contract. Plaintiff also argues the noncompete restrictions in section 6 of the agreement were effective immediately on January 19, 2007, when the agreement was executed.[2]

¶ 20 We now turn to address defendant's first contention that the trial court erred in finding that it did not properly waive the noncompete provision in the agreement. Generally, a party to a contract may waive provisions contained in the contract for its benefit. *Bartels v. Denler*, 30 Ill. App. 3d 499, 501 (1975). When interpreting a contract, however, the primary objective is to give effect to the intent of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007) (citing *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007)). Where, as here, the parties agree the language of the contract is clear and unambiguous, the court will accordingly ascertain the intent of the parties solely from the plain and ordinary meaning of the language of the contract. See *Sheehy v. Sheehy*, 299 Ill. App. 3d 996, 1000 (1998) (citing *Srivastava v. Russell's Barbecue, Inc.*, 168 Ill. App. 3d 726, 730 (1988), and *Stichter v. Zuidema*, 269 Ill. App. 3d 455, 459 (1995)). Although the parties here disagree whether the party against whom the waiver is enforced is defendant or plaintiff, contract language is not ambiguous simply because the parties do not agree on its meaning. *Srivastava*, 168 Ill. App. 3d at 732 (citing *Schroeder v. CMC Real Estate Corp.*, 157 Ill. App. 3d 757, 762 (1987)). We will thus examine only the plain language of the agreement to determine the parties' intent. See *Sheehy*, 299 Ill. App. 3d at 1000.

¶ 21 In the instant case, section 13(j) of the agreement governs all waivers and modifications of any provision in the agreement. Section 13(j) provides, in its entirety:

"(j) No waiver or modification of any provision of this Agreement or any rights or obligations of either party hereunder will be effective unless made pursuant to a writing signed by the party against whom the waiver or modification is enforced. A waiver or modification will be effective only in the specific instances and for the specific purpose of that writing."

¶ 22 After closely examining the language of section 13(j), we reject defendant's argument that it could waive the noncompete provision in the agreement because the provision was provided for its sole benefit. We agree with the trial court that the language in section 13(j) precludes such a waiver, as it expressly provides that all waivers and modifications require a writing signed by the party against whom the waiver or modification is enforced.

---

[2]Plaintiff also claims defendant argued in its opening brief that the requirements of section 13(j) were waived by defendant because the requirements were for defendant's sole benefit. Plaintiff maintains this argument is forfeited because defendant did not raise such an argument before the trial court. *Stuckey v. Renaissance at Midway, Inc.*, 2015 IL App (1st) 143111, ¶ 30 (an issue that was not raised in the trial court results in forfeiture of that issue on appeal). However, after having reviewed defendant's briefs, we find defendant did not make this argument on appeal. We thus conclude defendant has not forfeited any issues it has raised on appeal.

¶ 23    Moreover, we reject defendant's claim that its waiver complied with the terms in section 13(j). After closely examining the entire agreement, we agree with the trial court that "the party against whom the waiver or modification is enforced" stated in section 13(j) does not refer to defendant but rather describes plaintiff. This term, by its plain and ordinary meaning, directs us to distinguish between the party who would enforce the waiver or modification, *i.e.*, defendant, and the party against whom the waiver or modification is enforced, *i.e.*, plaintiff. See *Stichter*, 269 Ill. App. 3d at 458-59. Here, plaintiff did not sign any written waiver or modification to the noncompete provision in section 6 of the agreement, and thus defendant's alleged waiver was not compliant with section 13(j).

¶ 24    In addition, we find there is no language in the entire agreement to indicate that defendant's decision to enforce the noncompete restrictions was a condition precedent to the payment under section 6(b). Section 6(b) provides, in its entirety:

> "(b) [Defendant] will pay me the greater of: (i) one million dollars ($1,000,000) or (ii) an amount equal to the number of months of the Restricted Period, multiplied by an amount equal to my monthly base salary in effect immediately prior to the termination of my employment plus an amount equal to 75% of the sum of all cash bonuses paid to me during the immediately preceding four quarters multiplied by a fraction the numerator of which is 1 and the denominator of which is 12. These payments will stop if [defendant] determines that I have violated any provision of this Agreement or if a court determines that any provision of this Section 6 is unenforceable; however, if that occurs I will not be released from any other obligations that I have under this Agreement."

¶ 25    Reading section 6(b) and the agreement as a whole, we find that the only conditions that would result in excusing defendant from making the payment are the two conditions stated in section 6(b): (1) defendant determines that plaintiff has violated any provision of the agreement, or (2) a court determines that any noncompete provision in section 6 is unenforceable. We thus find defendant did not have the discretion to unilaterally waive the noncompete provision. *Gallagher*, 226 Ill. 2d at 233. Accordingly, the trial court did not err in finding that defendant did not properly waive the noncompete provision. *Id.*

¶ 26                                    C. Modification

¶ 27    Defendant argues it had the sole and absolute discretion to modify all of plaintiff's noncompete restrictions in section 6 of the agreement. In so arguing, defendant relies on the sentence in section 6(d) that states, "[defendant] shall be under no obligation to modify the restrictions in this Section 6, but may do so in its sole and absolute discretion." Defendant asserts that accordingly, the trial court erred in holding that its discretion to modify the restrictions was limited to the situation provided in section 6(d) of the agreement. Defendant maintains the trial court's holding is not supported by the plain and unambiguous language of this sentence in section 6(d).

¶ 28    Plaintiff responds the trial court did not err in rejecting defendant's argument because section 6(d) is not a general mechanism for defendant to unilaterally rewrite section 6. According to plaintiff, section 6(d) is only applicable to a very limited set of circumstances where an employee finds other employment he believes may violate his noncompete restrictions and, as a result, requests defendant to modify his restrictions. Plaintiff also points out that section 13(j) of the agreement provides "[n]o waiver or modification of any provision

of this agreement will be effective unless made pursuant to a writing signed by the party against whom the waiver is enforced." Plaintiff further asserts that accordingly, there was no proper modification because plaintiff did not agree to modify or waive his right to the $1 million payment.

¶ 29 Section 6(d) provides, in its entirety:

"Nothing in this Agreement prevents me from participating in a business that is not a Competitive Business, including any business involving an electronically tradeable product or commodity where each order is entered manually. However, if I believe in good faith that the restrictions in this Section 6 will prevent me from obtaining a new job, I may notify [defendant] in writing, providing reasonable details about the proposed responsibilities of the new job (without disclosing another person's confidential information). I will discuss with [defendant] whether appropriate accommodations can be made to protect [defendant's] interests while allowing me to take the new job and any appropriate adjustments to the payments provided for in Section 6(b). *[Defendant] shall be under no obligation to modify the restrictions in this Section 6, but may do so in its sole and absolute discretion.*" (Emphasis added.)

¶ 30 We observe that our supreme court has held that courts must construe contracts as a whole and view each provision in light of the others, because words derive their meaning from the context in which they are used. *Gallagher*, 226 Ill. 2d at 233 (citing *Board of Trade v. Dow Jones & Co.*, 98 Ill. 2d 109, 122-23 (1983)). As aforementioned, the primary objective in interpreting a contract is to give effect to the intent of the parties. *Gallagher*, 226 Ill. 2d at 232 (citing *Virginia Surety Co.*, 224 Ill. 2d at 556). The intent of the parties is "not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) (citing *Gallagher*, 226 Ill. 2d at 233).

¶ 31 With these principles in mind, upon examining the entire agreement we reject defendant's claim that it had discretion to unilaterally modify plaintiff's noncompete restrictions because of the sentence at issue in section 6(d), *i.e.*, "[defendant] shall be under no obligation to modify the restrictions in this Section 6, but may do so in its sole and absolute discretion." After reading the sentence at issue in the context of section 6(d) and the entire agreement as a whole, we agree with the trial court that the parties' intent was to provide plaintiff with a mechanism to request that his noncompete restrictions be modified in the event that plaintiff was offered other employment he believed would violate his noncompete restrictions. The language in section 6(d) expressly provides that it is under such limited circumstances that defendant would have the sole and absolute discretion to allow or deny plaintiff's request to modify his noncompete restrictions. We further agree with the trial court that the parties also intended to emphasize that defendant was not obligated to accept plaintiff's request under these limited circumstances.

¶ 32 Having so interpreted the plain language of the agreement, we find that the situation contemplated in section 6(d) is not present in the instant case. Plaintiff did not seek other employment after his resignation, and he did not request that his noncompete restrictions be modified to accommodate his resignation. In arguing that the sentence at issue in section 6(d) granted defendant the sole and absolute discretion to modify plaintiff's noncompete restrictions, defendant is essentially requesting that this court read the sentence in isolation. We decline to do so. Rather, we must read the sentence at issue in the context of section 6(d) as a whole, viewing the sentence in light of the other language in the section. *Thompson*, 241 Ill.

2d at 441; *Gallagher*, 226 Ill. 2d at 233; *Northwest Podiatry Center, Ltd. v. Ochwat*, 2013 IL App (1st) 120458, ¶ 40 (improper to determine the parties' intent by reading a contract clause or provision in isolation). Moreover, the sentence at issue does not provide defendant the sole and absolute discretion to modify plaintiff's noncompete restrictions particularly *after* plaintiff has already left defendant's employment. We thus find that the sentence at issue in section 6(d) did not grant defendant the sole and absolute discretion to modify plaintiff's noncompete restrictions.

¶ 33    Further, assuming *arguendo* that the sentence at issue was not strictly limited to the situation provided in section 6(d), defendant's argument still fails. As aforementioned, section 13(j) provides the conditions required to waive or modify any of the provisions in the agreement. As also previously mentioned, the plain language in section 6(j) provides that only a writing signed by the party against whom the waiver or modification is enforced can be used to modify the agreement, which we concluded was plaintiff. Here, there was no writing signed by plaintiff that modified the agreement. Accordingly, we find defendant did not properly modify plaintiff's noncompete restrictions and has failed to establish that the trial court erroneously interpreted the language of section 6(d). *Gallagher*, 226 Ill. 2d at 233 (the language of the contract is the best indication of the parties' intent).

¶ 34                                   D. Duty to Mitigate

¶ 35    Defendant asserts that even if the trial court was correct in finding it had breached the agreement, the trial court still erred in finding plaintiff did not have a duty to mitigate his damages. According to defendant, the nonbreaching party always has a duty to mitigate. Defendant further argues the trial court erred in finding plaintiff could not have mitigated his damages without breaching the noncompete provision himself. Defendant maintains that if "a party materially breaches a contract, the nonbreaching party is no longer required to perform under that contract." Defendant argues that, accordingly, if defendant had breached the agreement, plaintiff would no longer have been restricted from engaging in competitive activity. Defendant concludes plaintiff is particularly disingenuous in attempting to recover damages after having declined lucrative job offers, despite having knowledge that defendant did not intend to enforce the noncompete restrictions.

¶ 36    Plaintiff responds that the doctrine of mitigation of damages does not apply to the present case because, according to the agreement: (1) defendant made an absolute promise to pay plaintiff $1 million for his performance under the noncompete provision in section 6, and (2) plaintiff's contractual right to the $1 million payment had already vested when plaintiff agreed to and complied with the noncompete provision in section 6. Plaintiff further argues defendant's mitigation argument is disingenuous because (1) the agreement did not obligate plaintiff to find other employment after his departure, and (2) defendant did not seek to waive or modify other noncompetitive restrictions contained in section 9 of the agreement, *i.e.*, intellectual property developments, that similarly prevented defendant from seeking employment with defendant's competitors.

¶ 37    In its reply brief, defendant asserts plaintiff may not have had a duty to mitigate if defendant had never waived the noncompete restrictions and plaintiff had fulfilled his postemployment obligations. As this is not the case here, defendant maintains plaintiff had a duty to mitigate, especially because defendant had already informed plaintiff he was released

from his noncompete restrictions prior to plaintiff's performance under section 6, *i.e.*, not engaging in any competitive activity for six months after his departure.

¶ 38   Generally, when an employer breaches an employment contract, the employee has a duty to reasonably mitigate damages. *Gray v. Mundelein College*, 296 Ill. App. 3d 795, 809 (1998) (citing *Arneson v. Board of Trustees*, 210 Ill. App. 3d 844, 851-52 (1991)). This duty includes seeking other employment. *Id.* As aforementioned, however, where the parties agree the language of the contract is clear and unambiguous, the court must ascertain the parties' intent solely from the plain and ordinary meaning of the language of the contract. *Sheehy*, 299 Ill. App. 3d at 1000.

¶ 39   In the instant case, in arguing that plaintiff had a duty to mitigate his damages by seeking employment, defendant sidesteps the plain language of sections 6(a) and 6(b) of the agreement. Section 6(a) expressly provides that plaintiff agrees not to engage in competitive activity during his employment with defendant and for six months after his departure, regardless of the reason for his termination. Section 6(b) further provides that defendant "will pay" plaintiff the greater of $1 million or a sum based on a formula specified in section 6(b). After close examination of sections 6(a) and 6(b), we agree with the trial court that the parties exchanged promises in sections 6(a) and 6(b): (1) plaintiff promised not to engage in competitive activity for six months after his departure, and (2) in exchange, defendant promised to pay plaintiff a sum pursuant to section 6(b).

¶ 40   In addition, section 6(b) also provides, "[t]hese payments will stop if [defendant] determines that [plaintiff has] violated any provision of this Agreement or if a court determines that any provision of this Section 6 is unenforceable," which is inapplicable to the present case. Our review of the entire agreement reveals there are no other provisions that allow defendant to forgo this payment to plaintiff. Further, as aforementioned, there is no other language in the agreement that indicates defendant's decision to enforce the noncompete restrictions and plaintiff's performance, *i.e.*, not engaging in competitive activity for six months after his departure, were conditions precedent for defendant to pay under section 6(b).

¶ 41   Defendant relies on *Arneson*, *Calabrese v. Chicago Park District*, 294 Ill. App. 3d 1055 (1998), and *Feldstein v. Guinan*, 148 Ill. App. 3d 610 (1986), to argue that defendant's damages should be reduced by the sum he could have earned through reasonable diligence. We find defendant's reliance on these cases to be unpersuasive because these cases each involve facts and issues that are distinguishable from the case at bar.

¶ 42   In *Arneson*, this court addressed an issue that is irrelevant to the instant case: whether a faculty member that was wrongfully discharged was required to mitigate damages by accepting reemployment as chief of security with the original employer. *Arneson*, 210 Ill. App. 3d at 851-52. The facts in *Arneson* are distinguishable because, in the present case, plaintiff resigned and defendant did not offer reemployment. Further, and more importantly, in *Arneson*, the parties did not exchange promises that the former employer would pay the former employee a sum, and in exchange, the former employee would not engage in competitive activity after the termination of his employment. *Id.*

¶ 43   In *Calabrese*, a park district reduced an employee's discharge to a 10-day suspension but refused to award the employee back pay and benefits. *Calabrese*, 294 Ill. App. 3d at 1059. The *Calabrese* court recognized that a wrongfully discharged employee must act to mitigate his damages that should be reduced by the sum he could have earned through other employment. *Id.* at 1068. The *Calabrese* court, however, affirmed the trial court's decision that the

employee's back pay award was not to be reduced by the earnings he allegedly earned from other employment because the employer failed to demonstrate that the trial court's decision was against the manifest weight of the evidence. *Id.* at 1068-69. Thus, the facts and issues in *Calabrese* are irrelevant to the present case. Further, the facts in *Calabrese* are distinguishable because they do not address a situation where, as here, defendant contracted to pay plaintiff a sum in exchange for plaintiff's promise to not engage in competitive activity after his departure. *Id.*

¶ 44 In addition, defendant's reliance on *Feldstein* is inapposite. As defendant cites in its opening brief, the *Feldstein* court recognized that when an employee has been wrongfully discharged during his contract term, his damages should be reduced by the wages he earned during the same period and that could not have been earned in the same employment. *Feldstein*, 148 Ill. App. 3d at 613. The facts in *Feldstein*, however, are distinguishable from the instant case because, again in *Feldstein*, there was no promise exchanged between the parties that defendant would pay plaintiff a sum in exchange for plaintiff's promise to abide by his noncompete restrictions. *Id.* at 613-14. Accordingly, we conclude defendant has failed to demonstrate that plaintiff had a duty to mitigate his damages. *Gallagher*, 226 Ill. 2d at 233.

¶ 45                               III. CONCLUSION

¶ 46 For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 47 Affirmed.