**James W. MILLER, Plaintiff–Appellant,**

v.

**CRYSTAL LAKE PARK DISTRICT, Defendant–Appellee.**

No. 94–2556.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1994.

Decided Feb. 8, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 7, 1995.

David McArdle (argued), Zukowski, Rogers, Flood & McArdle, Crystal Lake, IL and Stuart D. Gordon, Chicago, IL, for plaintiff-appellant.

Michael Coppedge (argued), Cowlin, Curran & Coppedge, Crystal Lake, IL, for defendant-appellee.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Crystal Lake Park District, a municipal body of Illinois, issued a personnel manual informing its employees that "Department Heads, with the approval of the Director, may dismiss any employee for just cause." We may assume that this language, although cast as a grant of power to department heads, implies that the Director will not dismiss employees on whim. Language at the top of the manual's first page also informs employees that "[t]he contents of this manual are intended to provide a guide for employees and management of the District; however, these contents should not be construed by any individual as being an employment contract." James Miller, fired from his position as the District's superintendent of recreation, asks us to hold that the "just cause" language creates a "property" interest in employment under the due process clause of the fourteenth amendment. He concedes, however, that the manual's introductory language means that state courts would not enforce the "just cause" clause as a term in a contract of employment. Like the district

court, which dismissed the complaint under Fed.R.Civ.P. 12(b)(6), we think that this concession ends the litigation. Claims that lack a foundation in state law are too evanescent to count as "property" interests under the Constitution.

■ "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A "legitimate claim of entitlement" is one that is legally enforceable—one based on statutes or regulations containing "explicitly mandatory language" that links "specified substantive predicates" to prescribed outcomes. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989). See also *Wallace v. Robinson*, 940 F.2d 243 (7th Cir.1991) (en banc); *Miller v. Henman*, 804 F.2d 421 (7th Cir.1986). Statutes and regulations are not the only sources of property, but when they are missing the claimant must supply some equivalent "expectancy ... that was legally enforceable", *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 788 n. 21, 100 S.Ct. 2467, 2477 n. 21, 65 L.Ed.2d 506 (1980), such as a mutually binding obligation, *Jago v. Van Curen*, 454 U.S. 14, 18–20, 102 S.Ct. 31, 34–35, 70 L.Ed.2d 13 (1981). "Mutually binding obligation" is just fancy language for "contract," which returns us to the starting point.

The point of the introductory language to the Park District's manual is that its contents are *not* "mutually binding." Miller does not contest the district judge's conclusion that this language deprives the manual of force under Illinois law. It is not as if Miller, having seen at last the significance of this issue, has changed his mind and argued on appeal that the district judge's appreciation of state law is plain error. Compare *Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir.1993), with *Deppe v. Tripp*, 863 F.2d 1356, 1361–62 (7th Cir.1988). He is quite content with the conclusion that the manual is inoperative under state law. His

brief does not cite a single state case. Like Miller himself, we therefore accept the district court's treatment of state law. *Hartmann v. Prudential Insurance Co.*, 9 F.3d 1207, 1213–15 (7th Cir.1993) (a court must respect a concession of a state-law ground even if independent research could lead to a different conclusion); *Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1328–29 (7th Cir.1986).

*Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a companion to *Roth*, is the only time the Court has dealt with a claim based on a personnel manual. Sindermann taught at a junior college in Texas. Its personnel manual disavowed the existence of a formal tenure system but promised that faculty members would be retained as long as their teaching and attitude were satisfactory. Guidelines of the Texas College and University System provided that a person who had taught for more than seven years (as Sindermann had) possessed "some form of job tenure." *Id.* at 600, 92 S.Ct. at 2699 (footnote omitted). The Court concluded that the combination of manual, guidelines, and practices might add up to a legitimate claim of entitlement, and thus to property, even if none alone was an enforceable promise. But in a footnote with implications for Miller's claim, the Court added: "If it is the law of Texas that a teacher in [Sindermann's] position has no contractual or other claim to job tenure, [Sindermann's] claim would be defeated." *Id.* at 602 n. 7, 92 S.Ct. at 2700 n. 7.

Like *Sindermann*, our cases have equated "property" with the set of claims that state law recognizes. For example, *Upadhya v. Langenberg*, 834 F.2d 661 (7th Cir.1987), considered a claim that senior faculty members had promised a new recruit to the engineering faculty a five-year minimum term of employment. The written statutes of the university promised only year-to-year employment; we held that the oral promises, if made, were not enforceable under state law and therefore did not constitute "property." Similarly, *Wright v. Associated Insurance Companies, Inc.*, 29 F.3d 1244, 1249 (7th Cir.1994), holds that a promise not enforceable because of the statute of frauds does not create a "property" interest. See also, e.g.,

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080–81 (7th Cir.1987).

Miller pins his hopes on *Lawshe v. Simpson*, 16 F.3d 1475 (7th Cir.1994), which dealt with the effect of a personnel manual issued by the City of Gary, Indiana. The district court had put the handbook aside, looking instead for statutes and regulations; we said, *id.* at 1480–82, that an employment handbook may establish a legitimate claim of entitlement if it satisfies *Sindermann*'s essential requirement, which we took to be the existence of a "mutually explicit understanding." 16 F.3d at 1482, quoting from *Hermes v. Hein*, 742 F.2d 350, 355 (7th Cir.1984). Lawshe lost his case, however, because he did not show that Gary's personnel manual had been properly adopted. 16 F.3d at 1482–83. It was therefore not legally effective, and the lack of legal effect caused it to flunk *Sindermann*'s test of property. Crystal Lake Park District does not seek to undermine the authority of its manual; instead it says that the manual itself undercuts any claim that its promises have legal status. And Miller has no answer to this point. Whether the manual is unenforceable because improperly adopted (as in *Lawshe*) or because it so provides (as the Park District's does), the effect is the same: no legally enforceable interest, no legitimate claim of entitlement, no property.

All of this may leave the reader wondering why the Park District would issue a manual with "just cause" language only to take back the promise. Is it trying to fool prospective employees? The prominence of the disclaimer on page 1 makes fraud an unlikely explanation. The manual itself offers a better explanation. Recall the language: "Department Heads, with the approval of the Director, may dismiss any employee for just cause." The governing board of the Park District retains ultimate authority. It has delegated some managerial powers to Department Heads and the Director, and it wants to ensure that they use these powers for the good of the Park District. A desire to rein in the discretion of one's subordinates is common in bureaucracies, but efforts to do so need not imply the creation of "rights" enforceable by employees and other persons. Instead the top managers (here, the political officials) may establish standards for their subordinates without constraining their own discretion. We held in *Miller v. Henman* that such systems do not create "liberty" or "property" interests, because the existence of discretion at the apex of the bureaucracy defeats any legitimate claim of entitlement. A portion of the manual that we have not mentioned so far shows that the "just cause" language, coupled with the disclaimer, serves this function. Part VII of the manual describes a four-step grievance procedure, which Miller did not bother to use. An employee who disputes an adverse action may file a grievance, which is heard first by his supervisor, next by a Department Head, then by the Director, and finally by the Board of Commissioners of the Park District. Notice the ultimate decisionmaker: not the Director, and not an arbitrator, but the elected political officials. And the grievance policy does not suggest that the Commissioners must apply any particular substantive standard. They may make whatever decision their political instincts tell them is best.

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

Whether or not the "just cause" provision in the manual is enforceable by Miller as a matter of *state* law is not nearly as clear as the majority suggests. It is true that Miller's attorney waived a state "contract" claim, but I interpret this to mean that the plaintiff is conceding that the handbook was not enforceable under the *Duldulao*[1] line of cases—often referred to as exemplifying the state *contract* jurisprudence. But *Duldulao* does not "provide[ ] the only way for a public employee to establish a property interest in his or her job." *Hohmeier v. Leyden Community High Schools Dist. 212*, 954 F.2d 461,

1. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). Counsel believed this concession was unavoidable, given the district court judge's explicit ruling several months earlier (in *Lashbrook*) that the Crystal Lake Recreation Department's manual did not create a contract.

465 n. 2 (7th Cir.1992).[2] I therefore believe that the majority's analysis, though simple and clear, fails to capture the complexities of Illinois employment law.

For plaintiff argues forcefully that a legally enforceable claim has been created—call it implied promise, or mutually explicit understanding, or common law of employment, or whatever. Nothing in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 788 n. 21, 100 S.Ct. 2467, 2477 n. 21, 65 L.Ed.2d 506 (1980), establishing a legally enforceable right, indicates that that right must be based on a contract.

Plaintiff has no need to argue that there was a contract. *See, e.g., Gorman v. Robinson*, 977 F.2d 350, 356 (7th Cir.1992) (plaintiff "does not argue that ... CHA policy created an employment contract," but instead argues that it creates an implied promise of continued employment). A contract is not necessary if plaintiff relies, for example, on *"Perry* 's common-law-of-employment theory," *see Lawshe v. Simpson*, 16 F.3d 1475, 1481 (7th Cir.1994), a case whose holding the majority fails to refute. The contractual inquiry may be limited to the fact that "[p]rinciples of contract law naturally serve as useful guides in determining whether or not a constitutionally protected property interest exists." *Jago v. Van Curen*, 454 U.S. 14, 18, 102 S.Ct. 31, 34, 70 L.Ed.2d 13 (1981).

This court has found that Illinois courts recognize that property rights in employment can arise without a contract. "The Illinois Supreme Court has made clear that a state statute or regulation may create a property entitlement in continued employment without creating a contractual right to that benefit." *Hohmeier*, 954 F.2d at 465 (citing *Fumarolo v. Chicago Board of Education*, 142 Ill.2d 54, 153 Ill.Dec. 177, 201, 566

N.E.2d 1283, 1307 (1990)) (while neither the policy manual nor a relevant statute created enforceable contract rights in continued employment, the same manual and statute did create a property interest in continued employment). *See also Corcoran v. Chicago Park District*, 875 F.2d 609 (7th Cir.1989).

The majority relies heavily on the manual's disclaimer that it is not to be construed as a contract. Disclaimers (and the one here is found many pages from the "just cause" language) have become in some cases a convenient tool to gain the benefit of an employee handbook while limiting liability. *See generally*, Stephen F. Befort, "Employee Handbooks and the Legal Effect of Disclaimers," 13 Indus.Rel.L.J. 326 (1991/1992). "It is no answer that employers can festoon their manuals with disclaimers of liability for violations of the terms and conditions set forth in the manual...." *Enis v. Continental Illinois National Bank & Trust Co. of Ill.*, 795 F.2d 39, 41–42 (7th Cir.1986).

It is simply incorrect to find that a disclaimer negates all promises, or prevents a property right from arising. Even applying traditional contract analysis, a unilateral attempt to disclaim that an employee handbook has any contractual effect will often fail. *See Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359 (7th Cir.1994) (refusing to give effect to unilaterally implemented disclaimer; notwithstanding no-contract disclaimer in new handbook, employer-defendant must follow termination provisions of old handbook issued to plaintiff at time she was hired).

Some Illinois cases and federal cases construing Illinois law[3] find disclaimers inadequate to negate the binding effect of handbook provisions. *See, e.g., Littlejohn v. Ros-*

---

**2.** In *Hohmeier*, we found no *property* interest in continued employment on the basis of two *separate* grounds (not just a contractual analysis) for finding no property interest. First, no property interest existed because it failed the *Duldulao* requirements; second, no property interest existed because there was no "mutually explicit understanding" evidenced by employment policy. 954 F.2d at 465 n. 2.

**3.** Illinois caselaw in the area of employment handbooks has been described as "inconsistent, illogical, and ultimately unsatisfactory." Note,

*Employee Handbooks and Employment–At–Will Contracts*, 1985 DUKE L.J. 196, 209 (1985). The author describes Illinois as "a state that is a paradigm of the struggle with the contractual treatment of employee handbooks," and an examination of Illinois cases in this area "reveals the apprehension of a jurisdiction in transition wholly to abandon the traditional contract analysis." *Id.* at 205–206. That description might still be accurately applied to Illinois caselaw today.

*coe,* 1992 WL 184217, 1992 U.S.Dist. LEXIS 11263 (N.D.Ill. Jan. 16, 1992) (disclaimers in handbook state that employment is at-will, that handbook is only an advisory guide, and that handbook should not be construed as a contract; court finds the disclaimers inadequate to negate other handbook provisions, including procedures for discipline and the filing of grievances, which support finding genuine issue of material fact that contract exists); *Hicks v. Methodist Medical Center,* 229 Ill.App.3d 610, 170 Ill.Dec. 577, 593 N.E.2d 119 (1992) (handbook forms enforceable contract despite disclaimer on second-to-last page that handbook is subject to revision at any time and is not intended to establish contractual agreement with employees); *Perman v. ArcVentures, Inc.,* 196 Ill.App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982 (1990) (despite disclaimers that manual is not to be construed as a contract, that manual is only meant to provide "guidance," and that employer can modify the manual at any time, court holds that the manual creates contractual rights because the manual requires discharges be approved in advance by director, and discharges are subject to employee's appeal through the established grievance procedures). *See also Peterson v. Atlanta Housing Authority,* 998 F.2d 904, 914 n. 22 (11th Cir.1993) (rejecting argument that employer's reservation of unilateral right to revise policy manual prevents any property right from vesting).

The majority cites *Thompson's* requirement of "explicitly mandatory language" in statutes or regulations to establish a legitimate claim of entitlement. But *Thompson* offers little help, because it concerned a liberty interest in a prison context, and that analysis can differ considerably from the treatment of property interests, especially those arising in non-prison settings. *See Jago,* 454 U.S. at 18, 102 S.Ct. at 34. (*Thompson* cites *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983), which is also a prison case.)

Moreover, even where some discretion is to be applied, there is no requirement that

discretion may not be exercised until "after fair investigation with ... notice, hearing and opportunity" to be heard. *Goldsmith v. United States Board of Tax Appeals,* 270 U.S. 117, 123, 46 S.Ct. 215, 217, 70 L.Ed. 494 (1926) (quoted in *Board of Regents v. Roth,* 408 U.S. 564, 576 n. 15, 92 S.Ct. 2701, 2708–09 n. 15, 33 L.Ed.2d 548 (1972)). In addition, we have held that even in a liberty context, mandatory language is not necessary in order to find a constitutionally protected right. *Smith v. Shettle,* 946 F.2d 1250, 1253 (7th Cir.1991). "It also makes no difference either that the statute does not require but only permits segregation—most statutes leave discretion to the persons charged with their enforcement rather than commanding them to enforce the statute to the hilt...." *Id.*

The majority also points to *Upadhya,* where the court stated that there must be a promise to support a legitimate claim of entitlement.[4] But Upadhya, an assistant professor, had nothing more than his understanding of what was said to him about receiving tenure. Plaintiff here has much more—his employer's own words, carefully set forth in a detailed personnel manual.

As a number of Illinois cases suggest, in order to get at the meaning of a handbook provision, the analysis of separate parts of the handbook must be accomplished in the context of the handbook as a whole, and this is not a simple task. Here, the disclaimer is not prominent and appears in the "Purpose and Philosophy" section of the manual, more than 25 pages removed from the "just cause" language.

Quite apart from the state law question is the due process problem as it applies to government employees. Whether "an employee handbook creates a contract is a different question from whether 'the policies and practices of the [employing] institution' create a property right." *Lawshe,* 16 F.3d at 1481 (quoting *Shannon v. Bepko,* 684 F.Supp. 1465, 1478 (S.D.Ind.1988)). The Eleventh Circuit has also noted the complex relation of contract analysis to due process analysis:

4. Even the majority concedes that the manual contains a "promise," but the majority denies the promise has legal status since the manual also "take[s] back" the promise.

We recognize that this distinction [between breach of contract through wrongful termination and the constitutional context of personnel handbook cases] may be somewhat tenuous as contract principles are applicable in determining whether a property interest exists for constitutional purposes. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1971). Moreover, to hold that the manual creates no contract for purposes of a breach of contract claim but may create a property interest for purposes of the constitutional claim raises the difficulty of circularity because [the] constitutional claim must have a basis in state law. However, we observe that termination cases involving constitutional claims are *sui generis.* They are not purely contract, nor purely employment, nor even purely constitutional cases. With respect to [plaintiff's] breach of contract claim, we think the proper inquiry is whether her complaint would state a claim independent of her status as a public employee. *Peterson v. Atlanta Housing Authority,* 998 F.2d 904, 913 n. 18 (11th Cir.1993).

The majority also asserts that "mutually binding obligation" is just "fancy language for a contract." This phrase, or the language "mutually explicit understanding," means something extending beyond a mere contract. *See, e.g., Jago v. Van Curen,* 454 U.S. 14, 18, 102 S.Ct. 31, 34, 70 L.Ed.2d 13 (1981) (Court notes that to illustrate how such an understanding creates property rights, the Court in *Sindermann* used "two analogous doctrines," implied contracts, and labor law principles of common law of employment, such as tradition and unspoken understandings).

The majority maintains that the only purpose of the employment manual must be to guide subordinates—to delegate some managerial powers while reining in any discretion the managers might exercise. It is hard to imagine how this handbook simultaneously sends a "disclaimer" message to employees, and a "just cause" message only to managers to be ignored by employees. Beyond that troublesome logic, however, it is widely recognized that employers gain many benefits by promulgating personnel handbooks. *See*

*generally,* Befort, *supra.* It is also difficult to fathom a "just cause" message to be absorbed by management, while the Board of Commissioners—according to the majority— is not bound by "just cause" or any other standard.

It is exceedingly questionable to rely on the principle of *Miller v. Henman,* 804 F.2d 421 (7th Cir.1986), which involved the due process claim of a prisoner transferred to segregated confinement, and thus a different context and the very special administrative concerns of running a high security prison. In that context, there may be reason to construe language as limiting only the discretion of the authorities but denying corresponding rights to the persons who are the subject of the authoritative action. But there are really no indicia distinguishing a handbook as providing guidance for supervisors from one on which employees may rely. The distinction to me seems one of employer convenience only.

And I am mystified by the concept that the purpose of this elaborate scheme to govern employment in the Park District is to give the ultimate rein to the "political instincts" of the Park Commissioners. Political instincts are not the stuff of outstanding park districts. I believe it is premature to dismiss this complaint if we accept its well-pleaded allegations that the plaintiff reasonably relied on the promises set out in the handbook (including the "just cause" language coupled with an extensive grievance procedure). It is not "clear that no relief could be granted under any set of facts that could be provided consistently with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

I therefore respectfully dissent.