Robert A. LASHBROOK and Katherine D. Lashbrook, Plaintiffs–Appellants,

v.

D. James OERKFITZ, individually and as Commissioner of Crystal Lake Park District, David Phelps, individually and as Commissioner of Crystal Lake Park District, Candisanne Reedy, individually and as Commissioner of Crystal Lake Park District, et al., Defendants–Appellees.

No. 94–3377.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1995.

Decided Aug. 30, 1995.

Illinois park district's personnel policy manual (PPM) was not admissible as parol evidence to explain terms of employment contract since there was no ambiguity in nonrenewal provision of the contract; if parties renewed contract, such renewal would be on the same terms as existed in the prior term and if one party decided not to renew, 60 days notice had to be given.

Diane Karp, John B. Lashbrook (argued), Conklin & Roadhouse, Chicago, IL, for plaintiffs-appellants.

H. Case Ellis, Ellis & McNerney, Crystal Lake, IL, Michael Coppedge (argued), Cowlin, Curran & Coppedge, Crystal Lake, IL, D. James Oerkfitz, David Phelps, Candisanne Reedy, Robert J. Wagner, individually and as Commissioner of Crystal Lake Park District, defendants-appellees.

Michael Coppedge, Cowlin, Curran & Coppedge, Crystal Lake, IL, Diane Sherwood.

Michael Coppedge, Scott A. Puma, Cowlin, Curran & Coppedge, Crystal Lake, IL, for Crystal Lake Park Dist.

Before CUMMINGS, CUDAHY, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Robert A. Lashbrook ("Lashbrook") was fired from his job as Director of the Crystal Lake Park District (the "Park District"), and he and his wife, Katherine D. Lashbrook (also a Park District employee), were unceremoniously removed from Park District owned housing that they occupied as a perquisite of Lashbrook's job. Because no federal or state law rights were impinged by these events, we affirm the district court's dismissal of the Lashbrooks' claims.

## I. BACKGROUND

We review *de novo* a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Chaney v. Suburban Bus Div. of Regional Transp. Auth.*, 52 F.3d 623, 626 (7th Cir.1995). We accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiffs. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *Chaney*, 52 F.3d at 626–27. We will affirm dismissal under Rule 12(b)(6) only where it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Chaney*, 52 F.3d at 627. We describe the facts as they are alleged in the Complaint.

Lashbrook began working as the Director of the Park District in 1985, pursuant to a two-year contract. After the expiration of that contract, Lashbrook continued working without a contract for approximately two years. On October 1, 1989, Lashbrook entered into another two-year contract (hereinafter the "Contract") with the Park District, which was subsequently renewed. The Park District terminated Lashbrook on July 15, 1993, two and one half months before the expiration of the Contract's term. The Contract provides, among other things, that the Park District "may not terminate the employment of the DIRECTOR under this Employment Contract except for cause or upon mutual agreement of the parties." R. 26, Ex. B at 4. "Cause" is defined in the Contract as the Director's conviction for a felony or other crime involving moral turpitude, or the Director's failure to perform his duties and responsibilities.

The Contract provides that, if the Director is terminated for cause, he has the right to seven days' notice and a hearing before the Park District Commissioners. If the Director is terminated other than for cause, the Contract entitles the Director to full payment of compensation through the end of the term of the Contract or six months, whichever is shorter. The Director may also terminate the Contract without cause on sixty days notice.

Amendments to the Contract must be made in writing, and must be signed by both parties. The Contract also provides for automatic renewal:

> Upon appropriation of sufficient funds to meet the obligation of the DISTRICT to the DIRECTOR hereunder, this Employment Contract shall be deemed to be renewed according to its terms for that fiscal year through the end of the stated term. Thereafter, this Employment Contract shall be automatically renewed from year to year on the same terms as existing in the last year of the stated term, unless either party notifies the other party, at least sixty (60) days prior to the end of the stated term, that this Employment Contract will not be automatically renewed.

R. 26, Ex. B. at 6–7.

In 1989, while Lashbrook was under contract, the Park District promulgated a personnel policy manual (the "PPM"), which was given to both Lashbrook and his wife, Katherine, as employees of the Park District. The opening paragraphs of the PPM explain that the PPM is intended to be used as a guide for the employees and management of the Park District, and "should not be construed by any individual as being an employment contract." R. 26, Ex. C at 1. The PPM also provides that

> [t]he policies set forth in this manual are subject to revisions and periodic changes. Final interpretation of these policies is

vested solely in the Board of Commissioners of the Crystal Lake Park District. R. 26, Ex. C at 1.

The PPM recites that the Park District maintains housing in which full-time employees may reside. The PPM establishes a procedure for interested employees to apply for the housing. The Lashbrooks resided in Park District Housing beginning in the Spring of 1991. After Lashbrook's termination, Katherine applied to the Park District pursuant to the PPM, requesting that the Lashbrooks be allowed to continue residing in Park District housing. After she applied, and before the Park District responded, Lashbrook offered in a letter to settle his potential claims against the Park District, and enclosed a draft complaint. Shortly thereafter, the Park District notified the Lashbrooks that they intended to terminate the Lashbrooks' month-to-month tenancy at the end of Lashbrook's Contract term. A few days later, the Park District passed a resolution to convert the residential property that the Lashbrooks had been occupying to recreational purposes or to sell it. The Park District then informed Katherine that her claim for housing was rejected because the property was going to be converted. At the time of this rejection, Katherine was the most eligible Park District employee to apply for housing.

The PPM also provides that "Department Heads, with the approval of the Director, may dismiss any employee for just cause." R. 26, Ex. C at 21. In a related provision, the PPM states that "[t]he tenure of every employee shall be contingent upon acceptable conduct and satisfactory performance of duties." *Id.* The PPM provides a nonexclusive list of conduct that is sufficient cause to terminate an employee.

When Lashbrook was fired, he was adequately performing his duties, and he did not agree to the termination of his employment. He had not been convicted of any felony or crime of moral turpitude. He was not given notice of his discharge, nor was he afforded the opportunity for a hearing. He was directed to clean out his desk and turn in all office and car keys by the following day. His termination was publicly announced, and some of the Park District commissioners made comments to the press about his termination. Commissioner Wagner told the *Northwest Herald* that Lashbrook's strengths were in the financial areas, that his strengths were no longer consistent with the needs of the Park District, and that he was not moving the Park District "from point A to point B." Commissioner Phelps commented that the board was anxious to begin working towards a new direction and that the board "didn't feel that having him here would bring [them] toward that end." The *Herald* article also noted that the decision to fire Lashbrook was not unanimous and that Lashbrook left the board meeting where his termination was announced while it was still in progress. Lashbrook was paid through the end of the term of his Contract.

The Lashbrooks brought a six-count second amended complaint (the "Complaint") against the Park District and its commissioners, individually and in their capacities as commissioners; the first four counts were brought by Lashbrook and the last two by Katherine.[1] Count I alleges that Lashbrook had a property right in his continued employment and was deprived of that right without due process. Lashbrook alleges that the property right arose in four distinct ways: (1) through the automatic renewal provision of the Contract; (2) through the PPM, which Lashbrook alleges creates a contractual basis for a property right in continued employment; (3) through the PPM, which Lashbrook alleges creates a basis for a property right as a government rule or regulation, separate from contractually created rights; (4) through the PPM, which Lashbrook alleges creates a de facto re-employment or tenure system, separate from the contractually created rights.

Count II alleges that Lashbrook was deprived of a liberty interest in his good reputation without due process because of the manner in which he was discharged. Count

---

1. The district court dismissed the Lashbrooks' First Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(6). *See Lashbrook v. Oerkfitz,* No. 92 C 20224, 1994 WL 30537 (N.D.Ill. Feb. 2, 1994).

III is a state law claim for breach of contract, based on the Contract itself. Count IV is a state law claim for breach of contract based on a contract Lashbrook alleges was created by the PPM. Count V is a claim for retaliation based on the termination of Lashbrook's tenancy and the refusal of Katherine's request for housing after Lashbrook threatened a lawsuit regarding his termination. Count VI is a claim for discrimination against Katherine, based on gender and marital status, because the Park District rejected her request for housing.[2]

The district court dismissed all of the claims except Katherine's claim for gender discrimination. On Count I, referring to its prior opinion on the dismissal of the First Amended Complaint (*see* n. 1, *supra*), the court ruled that Lashbrook did not have a legitimate property interest in his continued employment. The Contract, the court stated, provided that either party could opt not to renew and therefore Lashbrook did not have a legitimate expectation of continued employment. The PPM explicitly disclaimed in its opening paragraphs that it constituted an employment contract, and therefore, the court ruled that the PPM did not provide a protected property right to continued employment under any of Lashbrook's theories.

The court also dismissed Count II, relating to deprivation of Lashbrook's liberty interest in his reputation, because neither the statements made to the press nor the manner in which Lashbrook was fired implicated his interest in his good name, reputation, honor, or integrity. At most, the court reasoned, the circumstances of the firing hinted at incompetence, which was not enough to impinge a liberty interest. Nor did Lashbrook plead that circumstances made it nearly impossible for him to find a new position in his profession. Thus, the allegations were insufficient as a matter of law, and Count II was dismissed.

The court dismissed Count V, the retaliation claim, because the Lashbrooks had no property interest in the Park District property in which they resided. The Lashbrooks resided in the house on a month-to-month tenancy, which could be terminated under state law on thirty days' notice by either party. Thus, because the Lashbrooks did not have more than a one-month interest in the property at any time, they failed to allege what harm they suffered when the tenancy was terminated. The court also rejected the Lashbrooks' argument that the PPM created a protected property interest in the house, holding that the disclaimer abrogated any such interest. Furthermore, the court ruled that the Lashbrooks had not made out a claim of retaliation because they failed to allege that the subject of the action that evoked the retaliation touched upon matters of public concern. Finally, the court dismissed Counts III and IV, the state law claims based in contract, because the Contract itself provided that the Park District could opt not to renew the Contract, and because the PPM did not constitute a contract under state law.

## II. INFRINGEMENT OF A PROPERTY INTEREST

■ We begin with Lashbrook's various theories in support of Count I, where he claims a property interest in continued employment. Property interests are created by state law. *Lohorn v. Michal,* 913 F.2d 327, 335 (7th Cir.1990). An explicit contract can create such property rights, as can certain employee handbooks. *Hohmeier v. Leyden Com. High Schs. Dist. 212,* 954 F.2d 461, 463 (7th Cir.1992). Employee handbooks can give rise to property rights in two distinct ways: (1) such a handbook may constitute an enforceable contract; *see Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987); or (2) such a handbook may create a binding obligation, without reference to traditional contract law, on a governmental body which promulgates it. *Hohmeier,* 954 F.2d at 463–64. Under the latter theory, whether a writing establishes a binding obligation depends

---

**2.** The court below dismissed that part of Count VI that claimed marital status discrimination on behalf of Katherine Lashbrook, and allowed the gender discrimination claim to go forward. The Lashbrooks do not appeal the dismissal of the marital status discrimination claim, and hence we will not address it.

on whether it is enforceable under the law of the jurisdiction that adopted it. *Id.* at 465. We will address each of these theories in turn.

## A. THE EMPLOYMENT CONTRACT

■ Lashbrook's first theory is that the "automatic renewal" provision of the Contract creates a property interest in continued employment. However, the Contract itself expressly limits this provision. Under the Contract, either party may opt not to renew simply by notifying the other party of its intention sixty days before the Contract expires. By its own terms, then, the Contract cannot create a reasonable expectation of continued employment. Furthermore, Lashbrook admits in the Complaint that the Park District notified him of its intent not to renew on July 16, 1993, more than sixty days before the expiration of the Contract term, on September 30, 1993. Therefore, there is no set of facts Lashbrook could prove which would entitle him to relief under this theory.

## B. THE PERSONNEL POLICY MANUAL

Lashbrook's other theories for creating a property interest in continued employment are all based on the PPM. We recently addressed some of these theories in a related case, *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865 (7th Cir.1995), which dealt with the very same PPM. The Park District employee in that case conceded that the PPM would not be enforceable as a contract under state law because of the disclaimer language in the opening paragraph. Based on that concession, we held that the PPM could not create a constitutionally protected property interest. Lashbrook makes no such concession, however, and argues that the disclaimer and language granting discretion to the Park District in interpreting the PPM are without effect. The only case that Lashbrook cites in support of this proposition is *Perman v. ArcVentures, Inc.*, 196 Ill.App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982 (1990), where an at-will employee successfully argued that an

employee manual containing unequivocal, mandatory language created an employment contract.

At the outset, we note that, unlike the plaintiff in *Miller* and unlike the plaintiffs in *Duldulao* and its progeny (including *Perman* ), Lashbrook had an express contract that governed his employment relationship with the Park District, and the instant case is distinguishable on that ground alone. *See McWhorter v. Realty World–Star, Inc.*, 171 Ill.App.3d 588, 121 Ill.Dec. 898, 901, 525 N.E.2d 1205, 1208 (1988). Lashbrook's Contract provides that either party may opt not to renew the Contract on sixty days' notice. Despite the Contract's non-renewal provision, however, Lashbrook argues that the PPM provides a right to continued employment, even at the end of the Contract's term. Thus, Lashbrook is arguing, in essence, that the PPM overrides the plain terms of the Contract. There are two ways in which the PPM could override the Contract: (1) if the PPM is an enforceable modification of the Contract; or (2) if the Contract is ambiguous on the issue of renewal, and the PPM is admissible as parol evidence to explain the terms of the Contract.[3]

■ We conclude that the PPM cannot constitute an enforceable modification of the Contract. Under its express terms, the Contract "represents the entire agreement of the parties with respect to the subject matter hereof, and it may not be altered or amended orally but only by agreement in writing." R. 26, Ex. B at 7. The Contract further provides that written amendments must be signed by both parties. R. 26, Ex. B at 6. In addition to the fact that neither party signed the PPM, the alleged amendment must fail for lack of consideration. The PPM was adopted after Lashbrook signed the Contract. Lashbrook argues that continuing to work after the PPM was issued constituted acceptance of the offers allegedly made by the PPM. But because Lashbrook was already contractually obliged to continue working when the PPM was issued, his continuation as Director constitutes neither accep-

---

**3.** The PPM could conceivably have been incorporated into the Contract by reference, *see* *McWhorter*, 121 Ill.Dec. at 900–01, 525 N.E.2d at 1207–08, but the Contract does not mention the PPM, which was adopted after the Contract was executed.

tance nor consideration. *See DeFontaine v. Passalino,* 222 Ill.App.3d 1018, 165 Ill.Dec. 499, 505, 584 N.E.2d 933, 939 (1991) (modifications to a contract must be supported by consideration and a promise to do something one is already obligated to do is no consideration). Hence, the PPM failed to become part of the employment contract.

 Moreover, even if the PPM could be considered an enforceable modification to the Contract, Lashbrook's claim to a property interest would fail even under the standards set forth in *Duldulao.* *Duldulao* requires, *inter alia,* that the employee manual contain a "promise clear enough that an employee would reasonably believe that an offer had been made." 106 Ill.Dec. at 12, 505 N.E.2d at 318. Lashbrook could not reasonably believe that the statement "Department Heads, with the approval of the Director, may dismiss any employee for just cause" would mean that he could only be dismissed for just cause. First, the language of the statement is permissive, not mandatory. *See Perman,* 143 Ill.Dec. at 915, 554 N.E.2d at 987 (mandatory language of employee handbook creates enforceable rights). Second, Lashbrook *was* the Director. A provision allowing a lower level employee (a Department Head) to dismiss other employees with *Lashbrook's* approval could hardly provide additional rights to Lashbrook himself.

Furthermore, Lashbrook could not reasonably believe that the other PPM statement on which he relies was an offer of continued employment. The statement that the "tenure of every employee shall be contingent upon acceptable conduct and satisfactory performance of duties" appears directly after the grant to Department Heads of the right to dismiss employees with the approval of the Director. Again, Lashbrook was the Director and this statement, read in context, does not apply to him.[4] Finally, when read in conjunction with the prominent disclaimer on the first page of the PPM, neither of these statements could have created a reasonable belief in Lashbrook that an offer of

employment was being made. *See Duldulao,* 106 Ill.Dec. at 12, 505 N.E.2d at 318.

 Nor is the PPM admissible as parol evidence to explain the terms of the Contract. We find no ambiguity in the non-renewal provision of the Contract. The Contract states that it "shall be automatically renewed from year to year on the same terms as existing in the last year of the stated term, *unless either party notifies the other party, at least sixty (60) days prior to the end of the stated term, that this Employment Contract will not be automatically renewed.*" R. 26, Ex. B at 6–7 (emphasis added). The meaning of this provision is clear. If the parties renew the contract, such renewal will be on the same terms as existed in the prior term. If one or the other decides not to renew the contract, sixty days' notice must be given. In the absence of ambiguity, we will not admit parol evidence to explain the terms of the contract. *McWhorter,* 121 Ill.Dec. at 900, 525 N.E.2d at 1207. Therefore, the PPM provides no basis in contract for the creation of a protected property interest, and Count I cannot survive dismissal on that basis.

 Lashbrook correctly argues that a regulation or rule promulgated by the government may create a property interest without regard to state contract law. *Hohmeier v. Leyden Community High Schs. Dist. 212,* 954 F.2d 461, 464 (7th Cir.1992). A rule or regulation must have "binding force" to create a constitutionally protected property right. *Id.* at 465. "Whether a writing establishes an 'obligation' depends on whether it is enforceable under the law of the jurisdiction that adopted it." *Id.* (citation omitted). Although a policy manual may create a property entitlement without reference to traditional contract law principles, the PPM here does not do so because it imposes no binding obligation on the Park District.

 As discussed above, Lashbrook relies on the just cause and tenure language to

---

4. Another part of the PPM defines the various categories of employees and clearly delineates the Director from the rest of the employees. The position of Director is an appointed one in the Park District, and appointed employees are directly responsible to the Park District Board of Commissioners. R. 26, Ex. C at 1. All other categories of employees report to the Director or to someone who, in turn, reports to the Director. R. 26, Ex. C at 2.

argue that the PPM creates a protected property interest. We rejected the same argument in *Miller* because the introductory disclaimer of the PPM "undercuts any claim that its promises have legal status." *Miller*, 47 F.3d at 868. As in *Miller*, Lashbrook has no response to the disclaimer in the opening paragraphs of the PPM, and therefore cannot rely on the PPM as the mutually binding obligation necessary to create a protected property interest. Because the language relied upon is not enforceable in the state courts, there is no "mutually binding obligation," and without a mutually binding obligation, there is no "legitimate claim of entitlement," which is necessary for the creation of a protected property interest in a benefit. *See Miller*, 47 F.3d at 867, and cases cited therein. In keeping with *Miller*, we find that the PPM creates no protected property interest in Lashbrook's employment to the extent Lashbrook claims the PPM as a government rule or regulation. Further, we note again that the language of the PPM on which Lashbrook relies applies to employees under the Director, and thus cannot create greater rights for the Director himself.

Nor can Lashbrook rely on the PPM as creating a de facto re-employment or tenure system. As Lashbrook correctly states, in order to have a protected property interest under this theory, the PPM must constitute a "mutually explicit understanding" sufficient to support a claim of entitlement to continued employment. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). However, the PPM disclaims that it is anything more than a guide for employees and management, subject to revision, and subject to the interpretation of the Park District Commissioners. The PPM explicitly disclaims that its contents should be construed as an employment contract. A document so rife with disclaimers cannot provide the basis for a mutually explicit understanding. As we explained in *Hohmeier*, " '[w]hen the policy manual can vanish with a wave of the administrator's wand, or when the administrator is free to disregard his own words, the [plaintiff] has nothing of substance and therefore neither liberty nor property.' " 954 F.2d at 466 (quoting *Miller v. Henman*, 804 F.2d 421, 425 (7th Cir.1986)).

In summary, Lashbrook has no theory under which he may claim a protected property interest in continued employment. The Contract provides no such interest because either party can opt not to renew with notice, and the Park District did just that. The PPM provides no basis for a protected property interest in continued employment because it does not meet the requirements of contract and is rife with disclaimers that negate any "mutually binding understanding," or "binding force" or "mutually explicit understanding" required to create such an interest. Because he has no property interest in continued employment, Lashbrook's due process claim must fail. We therefore affirm the dismissal of Count I.

## III. INFRINGEMENT OF A LIBERTY INTEREST

■■■■ Lashbrook claims that, given the circumstances of his termination, the Park District deprived him of his liberty interest in his good name and reputation by creating the false impression that he was "not a capable parks and recreation manager." R. 26 at 14. The dismissal of a government employee infringes a liberty interest "where (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir.1993). Denial of a liberty interest requires more than just being fired. "Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy." *Id.* (quoting *Simpkins v. Sandwich Community Hosp.*, 854 F.2d 215, 218 (7th Cir.1988)). We noted in *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir.1986), that any time an employee is involuntarily terminated, some stigma attaches which affects future employment opportunities. However, to infringe an employee's liberty interests, the circumstances of the termination must make it virtually impossible for the employee to find

new employment in that field. *Ratliff,* 795 F.2d at 625. Furthermore, the government must have actually participated in disseminating the information to the public. *Mitchell,* 996 F.2d at 167.

■■■■ Lashbrook sufficiently alleged that the government actually participated in disseminating the information. The Park District publicly announced the firing, and provided statements to the press that were subsequently published in the local newspaper. However, he has not pled enough to meet the other half of the test. The termination itself, and the announcement of the termination do not, in and of themselves, infringe a liberty interest. *Ratliff,* 795 F.2d at 625. The statements made by the commissioners do not implicate Lashbrook's good name, reputation, honor or integrity. At most, the statements indicate the Park District's belief that Lashbrook, although strong in financial areas, was not competent to carry the Park District in the new directions the board had mapped out. But not even a direct claim of incompetence is enough to impinge a liberty interest. *Mitchell,* 996 F.2d at 167. All that remains, then, is the Park District's request that Lashbrook vacate his office and turn in his keys in short order. Although it is unclear from the record whether this request was publicly disseminated by the Park District, we think that this allegation is not enough as a matter of law to state a claim for infringement of a liberty interest without additional allegations that the circumstances made it virtually impossible for Lashbrook to find a new position in his chosen profession. *Ratliff,* 795 F.2d at 625. In summary, the gravamen of Lashbrook's allegations in Count II is that the circumstances of the termination made him look incompetent. Such an assertion is not sufficient to state a claim for infringement of a liberty interest.

### IV. THE STATE LAW CLAIMS

■■■ We also affirm the dismissal of Lashbrook's state law claims for breach of the Contract (Count III) and for breach of the "contractual terms contained in" the PPM (Count IV). As discussed above in relation to Count I, the plain terms of the Contract allowed the Park District to discharge the Director as long as it paid him through the end of the term of the Contract or six months, whichever was shorter. Lashbrook admits the Park District paid him through the end of the term. The Contract also expressly allows the Park District to opt not to renew the Contract on sixty days notice, and Lashbrook admits that the Park District notified him of the non-renewal more than sixty days before the expiration of the Contract. Thus, Lashbrook can prove no set of facts consistent with Count III which would entitle him to the relief he requests, and we affirm the dismissal of Count III on that basis.

Furthermore, we have already ruled that the PPM did not meet the requirements of contract law given that Lashbrook has failed to allege any facts in support of consideration. Because Lashbrook was contractually obliged to continue working after the PPM was issued, he cannot rely on the fact that he continued to work to provide consideration for any additional contractual benefits allegedly provided by the PPM. Therefore, we affirm the dismissal of Count IV.

### V. RETALIATION

Both Robert and Katherine Lashbrook claim that the Park District retaliated against them for exercising their first amendment rights when they threatened to file this lawsuit. Lashbrook claims that the Park District retaliated against him by threatening to evict him from Park District-owned housing. Katherine claims the Park District retaliated against her by refusing to grant her request for Park District housing when she was the most eligible employee for the housing. Both of these events occurred after Robert threatened to file a lawsuit against the Park District if the Park District would not settle his potential claims.

■■■■ In order to state a claim for retaliation for exercising first amendment rights by petitioning the government for redress of grievances, a plaintiff must allege that the petition touched upon matters of public concern. *Gray v. Lacke,* 885 F.2d 399, 412 (7th Cir.1989). We begin our inquiry by

looking at the content, form, and context of the petition. The complaint filed by the Lashbrooks evidences a dispute between employer and employees. A dispute between an employer and employee is not necessarily a matter of public concern, *id.* at 413, especially where the employee's complaint is entirely personal in nature. *Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir.1994). Lashbrook argues that the firing of a Park District Director is a matter of public concern, but this allegation alone is not sufficient. We must analyze the form and content of the Complaint to see if the concern is public or private. *Gray*, 885 F.2d at 412. We have previously described this distinction as being the difference between an employee complaining about matters private to himself, such as whether he was being paid enough or was given deserved promotions, as compared to an employee who is engaged in whistle blowing or otherwise going public with matters in which the public might be expected to take an interest. *See Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir.1994). Lashbrook's Complaint touches upon matters which are purely private when viewed in this light. His Complaint was not an effort at whistle blowing or some other matter of concern to the public generally, but was rather concerned with his private dispute with the Park District.

■ Furthermore, the Lashbrooks have failed to adequately allege the harm they suffered when the tenancy was terminated and when Katherine's request was rejected. The Lashbrooks did not have a right to reside in Park District housing. The tenancy under which they occupied the house was a month-to-month tenancy. Under Illinois law, the tenancy could be terminated by the Park District on thirty days' written notice. *See* 735 ILCS 5/9–207. The Lashbrooks admit in the complaint that the Park District notified them of the lease termination more than thirty days before they were to vacate the premises. Thus, the Park District did not take away from the Lashbrooks any interest in which they held a continuing right.

■ As discussed above, the PPM could not be a source of contractual rights for Robert Lashbrook because there was no acceptance or consideration. Thus, Robert had no contractual right to the housing arising out of the PPM. The analysis for Katherine Lashbrook is slightly different. The record does not reveal whether Katherine was working for the Park District under an express contract, or whether the PPM was in place before she began working. Construing the record in the light most favorable to the Lashbrooks, Katherine was an at-will employee when the PPM was issued and thus her continuing to work constituted acceptance and consideration for any promises contained in the PPM.

■ The only question remaining, then, is whether the PPM contained promises clear enough to lead a reasonable person to believe that an offer was being made. *Duldulao*, 106 Ill.Dec. at 12–13, 505 N.E.2d at 318–19. Here, Katherine encounters the same problems that Robert Lashbrook encountered. The PPM begins with a prominent disclaimer, and a statement vesting authority to change or interpret the PPM in the commissioners. The language relating to housing is not mandatory, and makes clear that a separate agreement must be reached prior to occupancy. R. 26, Ex. C at 12. At best, the PPM contains an agreement to agree about housing that may or may not be available, and in no sense is a clear promise. Because neither Katherine nor Robert have alleged any facts in support of a right to reside or continue to reside in the housing, they have no claim for retaliation.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.